MESCH CLARK ROTHSCHILD
259 North Meyer Avenue
Tucson, Arizona 85701
Phone: (520) 624-8886
Fax:   (520) 798-1037
Email: BHoltzman@mcrazlaw.com
Email: JSutton@mcrazlaw.com
       ecfpima@mcrazlaw.com

By:    Barney M. Holtzman, # #016554
       Jana L. Sutton, #032040
       66146/iw

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Fritch,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Orion Manufactured Housing Specialists, Inc., et al.;<br><br>　　　　　　　Defendants. | No. CV-21-00509-TUC-JGZ (JR)<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>(Honorable Jennifer G. Zipps) |

When a defendant admits liability at the outset for a claim containing a right to attorneys' fees, will a plaintiff who racks up attorneys' fees and costs to force a minimally better settlement be rewarded in the award of reasonable attorneys' fees? That is what Plaintiff's Motion for Attorneys' Fees and Costs is about.

> The law of this circuit is clear: "it is an abuse of discretion for the district court to award attorneys' fees without considering the relationship between the 'extent of success' and the amount of the fee award." *McGinnis v. Kentucky Fried Chicken of Cal.*, 51 F.3d 805, 810

>(9th Cir. 1995). The "extent of success" in a case for money damages refers to the amount recovered by the plaintiff. *See id.* Thus, district courts look closely at attorneys' fees requests in order to guarantee that the amount awarded "is commensurate with the extent of the plaintiff's success." *Id.*

*Elam v. Valley County*, 1999 U.S. App. LEXIS 15097, *7.

Defendants acknowledge Plaintiff was entitled to additional compensation from his brief work with Defendants and recognize Plaintiff's counsel is entitled to a reasonable fee. They were and are willing to pay that.

## I. Background

Plaintiff's counsel requests fees for four attorneys to perform extensive work on a case in which Defendants immediately admitted liability, admitted liquidated damages were appropriate, and sent Plaintiff checks for his unpaid overtime ($2,274.88) plus liquidated damages (another $2,274.88), plus an additional sum to cover reasonable attorney fees for the filing of a generic FLSA complaint. In response to Defendants' offer, Plaintiff's counsel made a "non-negotiable" demand of $11,000, threatened a collective action if not paid,[1] and quickly shut down further settlement discussions when questioned about the basis for requesting that amount. Per Plaintiff's motion for attorney fees, he had approximately 5.9 hours of work[2] into the case by the end of the day on January 13, which would total $2,360 in attorney fees.[3]

Attached at **Exhibit A**, and included below, is the initial email exchange between counsel that illustrates how a simple case involving a small amount of unpaid overtime became an attempted collective action involving numerous sets of generic discovery

---

[1] Plaintiff's counsel's January 14, 2022 time entry makes clear he told defense counsel if the non-negotiable $11,000 demand wasn't paid, he would file a collective action.

[2] Although counsel spent 5.9 hours performing an intake and collecting information from Plaintiff to file his initial verified complaint, the complaint has incorrect information about termination date, weeks worked, and starting wage.

[3] At a 40% contingency rate, as indicated in Plaintiff's fee agreement, counsel would have received $4,400 of the total $11,000 demand.

2

requests, unnecessary subpoenas, overstaffed depositions and, ultimately, a request for $70,000 in attorneys' fees.

> Hi Jason,
>
> Thanks for speaking with me this morning and your professionalism. As I mentioned, I met with Jim Miller this morning and will be representing him and the company in this matter. We are gathering some documents and would like to discuss a settlement, as the amount in controversy doesn't sound large and the issues straightforward. I understand from you that the clerk entered default against the Company earlier this week. As we discussed, I don't think we need to move to vacate the default based on your agreement not to obtain a default judgment against the Company or a default against Mr. Miller. If you think we should clear up the record, I will do so ASAP.
>
> I will let you know next week what our records show as to hours worked by Mr. Fritch and hopefully we can get to a quick settlement. Below is my new contact information.
>
> Barney

\* \* \* \*

> Barney,
>
> My client has given me authority to settle this case at $13,000. This is inclusive of all attorneys fees and costs.
>
> Thanks,
>
> Jason Barrat | Attorney

\* \* \* \*

> Hi Jason,
>
> Attached to this email is a payroll log showing Fritch's pay and OT hours. I've also attached a spreadsheet I created from the log to show what is owed. I took the hours at each pay rate and multiplied them by ½ his rate (Fritch admits he was paid cash for these hours) and doubled it (liquidated damages). The total owed is: $4,549.75. My client is willing to pay $5,549.75 to settle this case. We would want a standard release, including full release of all claims and confidentiality.
>
> In addition to the payroll log, it will be easy to show Fritch doesn't know how many hours he worked. He swore the complaint was correct. Fritch testified he was hired at $13.00/hr. It actually was $12.00/hr. Fritch testified he worked until September 14, 2021. He actually was let go on August 5, 2021. (See the attached DES paperwork showing 8/5/2021 as last day worked, and Fritch claiming it was 8/7/2021.) His only comment about overtime hours is that he worked approximately 50 hours the week of September 6, 2021. As shown, he wasn't working for Orion that week.
>
> I hope this resolves the case. Let me know how you'd want to handle withholding and if you'd want a separate check for attorneys' fees.
>
> Thanks,
> Barney

\* \* \* \*

> Barney,
>
> I just spoke with my client and he disputes the hours that are listed. He has multiple witnesses (who were also not paid OT), who are willing to testify regarding the hours that he worked. My client has given me a last and final non-negotiable offer to settle this case. The offer is $11,000. He is not willing to take a penny less. This offer will be left open until Monday at noon. If this is not acceptable, once you notice in, I will stipulate to set aside the default. If this is acceptable, I will give you the breakdown of attorneys' fees/costs and how much to my client.
>
> Thanks,
>
> Jason Barrat | Attorney

Thanks Jason. I don't know how I can analyze this offer without knowing what he claims he worked or what your attorneys' fees are.

Your client has been untruthful under oath so I don't see any reason you or I should trust his claims as to hours or witnesses.

I will have my client send checks to Fitch, care of you, for the amount of unpaid OT, minus withholding, and a second check for the liquidated damages. If you'd like to talk about your attorneys' fees or discuss moving the lawsuit forward, let me know a good time to chat.

Thanks,
Barney

\* \* \* \*

Barney,

My client rejects all tendered payments and will not cash those payments. I have litigated this issue many times. A couple orders are attached. I am free right now to chat. Let me know if now is a good time.

Thanks,

Jason Barrat | Attorney

\* \* \* \*

Hi Jason,
  I'll give you a call this morning.
  Those cases don't address this situation, as we are not claiming the matter is moot. We are paying what we understand is due your client based on our records of hours worked. Your client has no records and verified facts about his hours that are easily provable false. We also have offered to pay a reasonable attorney fee and cost, which you have refused to tell us. The fact you filed a verified complaint with incorrect facts, which could easily have been determined with a little research goes to the amount of fees that could be awarded.
  I'm sure you will let your client know you have approximately $4,800 in checks made payable to him. If the decision is to not cash those checks, that is fine. If we are correct as to what he is owed, I don't think a judge is going to award you any additional fees or costs.

Barney

\* \* \* \*

So, are you rejecting our offer?

Jason Barrat | Attorney

\* \* \* \*

Hi Jason,
  Thanks for speaking with me. Before I speak with my client about his options, I want to make sure I understand. The offer to settle is $11,000 for Fritch's FLSA claims and attorneys' fees/costs. You won't provide us a breakdown of that number between FLSA claims and attorneys' fees/costs nor will you tell us (1) what Fritch believes he is owed for unpaid OT or (2) how many OT hours Fritch claims he worked.
  If we don't accept the $11,000 offer, we can go forward with the litigation. Fritch will stipulate to vacate the default and then will amend to make it a collective action?

Barney

4

> Barney,
>
> At this time, there is no offer on the table from our side as Defendants have declined our non-negotiable final offer.
>
> Our side is willing to stipulate to vacate the default. After our phone call today, I drafted the amended complaint and I am waiting for my client's signature to file it. It should be filed sometime on Monday.
>
> Your client is free to make any offer he would like (although I would recommend it to be in excess of our last offer to receive any traction) and I will take it to my client but our last offer is off the table at this time.
>
> Thanks,
>
> Jason Barrat | Attorney

From that point forward, this case has been driven entirely by Plaintiff's attorney fees.

Plaintiff's counsel (1) filed a collective action complaint, which, while costly, did not change this litigation as no other Plaintiffs opted in;[4] (2) drafted numerous sets of written discovery, much of which was directed at the question of liability even though liability has never been disputed, and which were clearly drafted for other lawsuits because they contained numerous blatant errors with regard to the underlying facts; (3) issued subpoenas of a Defendant's bank records for no conceivable reason; (4) had multiple attorneys attend depositions; (5) filed an unsuccessful motion for summary judgment alleging that he was entitled to judgment in his favor as to the hours he worked based on Plaintiff's general estimate of what hours he may have worked, despite that those estimates conflicted with Defendants' records; and then (6) unsuccessfully challenged the Magistrate's report and recommendation regarding the motion for summary judgment.

---

[4] The only Plaintiff who attempted to opt in was clearly unqualified to do so and would not have been brought into the litigation had Plaintiff's counsel performed due diligence. When defense counsel pointed this out, Plaintiff's counsel refused to voluntarily dismiss and demanded Defendants provide discovery answers in a week about this improper plaintiff. (**Exhibit C**, 5/26/22 email string.) Almost three weeks later, Plaintiff moved to withdraw the opt-in plaintiff. (Dkt. 49.)

5

In sum, this case could have been resolved shortly after the complaint was filed had Plaintiff engaged in good faith negotiations rather than relying on fee shifting as leverage.

Plaintiff's time records include categories of fees to which Plaintiff's counsel is not entitled, including clerical tasks, paralegal tasks, block-billed tasks, inadequately defined tasks, and tasks for which he was not successful. When these entries are removed, Plaintiff's counsel is entitled to no more than **$24,905.00** in fees. (*See* **Exhibit B**, Timesheet with Objections and Revised Hours Calculation.) In addition, the Court may adjust a request for attorneys' fees up or down depending on various factors all focused upon reasonableness of the award in relation to the extent of the Plaintiffs' success. Plaintiff's litigation resulted in Defendants paying approximately 53% more than what was offered at the outset, which is an appropriate measure of the success of Plaintiff's claim. A reasonable fee is therefore 53% above Plaintiffs fees at the time, or **$3,610.80**, which is well above the 40% contingency Plaintiff agreed to.

## II.   Counsel's Fee Request is Unreasonable

Under Local Rule 54.2, a party seeking fees must show that the party's request is for a reasonable amount. LRCiv. 54.2(c); *Strojnik v. Driftwood Hosp. Mgmt. LLC*, No. CV-20-01532-PHX-DJH, 2021 WL 3190863, *2 (D. Ariz. July 28, 2021). It is Plaintiff's counsel's responsibility to support his requested award. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (pinning the responsibility of providing documentation in support of its request on the attorney seeking the award). In support of a motion for fees and costs, the requesting party must include (1) a statement of consultation, (2) a complete copy of any written fee agreement, (3) a task-based itemized statement of time spent, and (4) an affidavit from counsel.  LRCiv. 54.2(c). "The affidavit of counsel should indicate the type of legal services provided, the date the service was provided, the attorney providing the service . . ., and the time spent in providing the service." *Rindlisbacher v. Steinway & Sons Inc.*, 2021 WL 2434207, *9 (D. Ariz. 2021) (quoting *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 187 (Ariz. App. 1983)).

6

When analyzing the reasonableness of the requested fee, the Court should only consider services the attorney rendered that advanced his client's successful claim, that were not "clerical" in nature, and that it expects a prudent lawyer to perform. *Lexington Ins. Co. v. Scott Homes Multifamily Inc.*, No. CV-12-02119-PHX-JAT, 2016 WL 5118316, *15, *17 (D. Ariz. Sept. 21, 2016). The services rendered must be adequately described in the motion so that the Court can undergo a thorough analysis of the request's reasonableness. LRCiv. 54.2(e)(2).

### A. This Case Should Have Been About How Many Hours Plaintiff Worked.

Defendants admitted liability and liquidated damages in the initial calls with Plaintiff and attempted to pay him based upon records they maintained of his hours. Plaintiff "disputed" those hours but offered no evidence. Instead, Plaintiff immediately filed for a collective action. In their answer, Defendants formally admitted liability and liquidated damages. At that point, the only issue to be litigated should have been how many hours of overtime had Plaintiff worked for which he had not been fully compensated. Plaintiff had other ideas.

The day after serving his initial disclosure statement early, Plaintiff served his first set of NUIs and RFPs on his behalf and for "opt-in Plaintiffs," even though the Court had not ruled on the Motion to Certify. Attached hereto as **Exhibits D & E**. Of the 10 interrogatories, one of them arguably dealt with Plaintiff's hours. The rest dealt with issues Defendants admitted in their answer. Of the 9 RFPs, two arguably dealt with Plaintiff's pay. Plaintiff filed a 2nd set of NUIs and RFPs to gather information about Defendants' bank accounts. Attached hereto as **Exhibit F & G**. Plaintiff issued a 3rd set of RFPs to ask for Defendant Orion's tax and revenue documents. Attached hereto as **Exhibit H**. Three months later, Plaintiff issued his 4th set of RFPs to obtain Defendant Miller's personal tax documents. Attached hereto as **Exhibit I**. Plaintiff served RFAs about whether Defendants issued 1099s for, or paid employment taxes on cash payments to employees and whether Defendants lied on their taxes. Attached hereto as **Exhibit J**

7

These efforts were patently excessive considering the only dispute was the number of hours Plaintiff actually worked during his brief employment.

### B. The Overtime Hours Plaintiff Estimated He Worked Contradict His Sworn Statements in the Verified Complaint and Verified Amended Complaint and Appear To Try and Justify The Settlement Demands.

As the Court is aware from the summary judgment motion, Defendants' records showed the overtime hours Plaintiff worked for which they paid cash. Defendant Orion's office manager testified these were true and accurate.

Plaintiff, meanwhile, has no records of the hours he worked for which he was not fully compensated. He "disputes" Defendants records but was shown to have lied about basic facts of his employment. Moreover, it was not until his 5th Supplemental Disclosure Statement, almost 9 months after filing his complaint, that Plaintiff for the first time estimated the overtime hours he worked – again contradicting his Verified Complaint. Clearly, Plaintiff's disclosure was in furtherance of his attorneys' fees claim.

Plaintiff's Verified Complaint stated he was paid $13/hr when hired. Complaint ¶44. He said he "routinely worked in excess of 40 hours per week." *Id.* ¶46. "For example, during the workweek of September 6, 2021, Plaintiff worked approximately 50 hours." *Id.* ¶48. "**When Plaintiff worked over 40 hours, he was paid straight time for overtime hours in cash.**" *Id.* ¶49 (emphasis added). Plaintiff said he was fired September 14, 2021. *Id.* ¶24.

As discussed, Defendants shared their records of Plaintiff's hours before Plaintiff amended his complaint. They also pointed out that Plaintiff was hired at $12/hr, not $13/hr and he could not have worked 50 hours the week of September 6 because his last day of work was August 5, 2021.

Importantly, in his Amended Verified Complaint, Plaintiff adopted the pay rates and dates of raises shown in Defendants' records. *Amended Verified Complaint* ¶¶49-51. Plaintiff also adopted the very specific number of hours worked, 54.5, contained in Defendants' records. *Id.* ¶54 ("For example, during the workweek of February 11, 2021,

8

Plaintiff worked approximately 54.5 hours."). And, importantly, Plaintiff repeated the allegation: "**When Plaintiff worked over 40 hours, he was paid straight time for overtime hours in cash.**" *Id.* ¶55 (emphasis added).

In his February 22, 2022 Verified Disclosure Statement, Plaintiff did not disclose his alleged damages because, he claimed, the case was in the early stages of discovery. Of course, there is no reason Plaintiff wouldn't know his estimate of the overtime hours he worked. As the Court is aware, from the outset, Plaintiff has claimed his estimate of overtime hours is admissible because, in his opinion, Defendants did not keep records of his hours. His estimated overtime hours also were not in his 1st, 2nd, 3rd, or 4th Supplemental Disclosures.

In his 5th Supplemental Disclosure, Plaintiff for the first time estimated his overtime hours. He agreed with Defendants' records as to overtime hours for which he was paid straight time cash. But, for the first time, he claimed there were more than 150 hours of overtime for which he did not receive any pay from Defendants. Thus, his verified statement **twice** that, when he worked overtime for Defendants, he was paid straight time in cash was, apparently, not true. Of course, without a claim of additional overtime, Plaintiff understood his rejection of Defendants' offer of his unpaid overtime plus liquidated damages was unreasonable.

Plaintiff should not be rewarded for making multiple false statements, under oath, simply to try and improve his case.

### C. Clerical and Other Nonlawyer Tasks

Not all matters in litigation need to be performed by an attorney charging $400 per hour. The Arizona District generally excludes time spent toward clerical tasks, like filing and scheduling, regardless of who performs them. *Pearson v. National Credit Systems, Inc.*, 2010 WL 5146805, *3 (D. Ariz. 2010); *see also Lexington Insurance Co. v. Scott Homes Multifamily Inc.*, 2016 WL 5118316, *16 (D. Ariz. 2016) (excluding entries for printing, e-filing and downloading). Similarly, paralegal or similar tasks, such as

preparing chronologies, summarizing of documents, and gathering exhibits, are not recoverable at a full attorney rate.

Time entries that should be excluded as unrecoverable clerical tasks or billed at a reduced rate as paralegal tasks are marked "clerical" or "paralegal" in **Exhibit B**. For example:

| | | | | |
|---|---|---|---|---|
| 2/3/2022 | FOIA Request records from AZ industrial commission and labor board | 0.3 | $400 | $120.00 |
| 4/4/2022 | Review call-in information | 0.1 | $400 | $40.00 |
| 8/3/2022 | Draft deposition notices | 0.3 | $400 | $120.00 |
| 8/29/2022 | Research defendants on been verified | 0.4 | $400 | $160.00 |
| 12/19/2022 | Draft notice of name change of firm | 0.2 | $400 | $80.00 |
| 12/21/2022 | Draft firm name change letter to plaintiff | 0.2 | $400 | $80.00 |
| 6/12/2023 | Populating all admissions/denials from MSJ, Answer and RFAs, arranging for JPS, reviewing documentary evidence, including two exhibits, reviewing witnesses | 3.4 | $400 | $1,360.00 |

In total, Plaintiff requests $6,080 in fees for clerical or paralegal tasks.

### D.    Block Billing and Vague Entries

Counsel requests numerous hours of time that have been inappropriately "blocked" together. *See* LRCiv. 54.2(e); *Lexington Insurance Co.*, 2016 WL 5118316, at *16. Other entries violate the requirements of Local Rule 54.2(e)(2): "If the time descriptions are incomplete, or if such descriptions fail to adequately describe the service rendered, the court may reduce the award accordingly." These entries are marked "block billed" or "vague" in **Exhibit B**, and include for example:

| | | | | |
|---|---|---|---|---|
| 2/22/2022 | Draft disclosure statement, first nuis and rfps | 1.4 | $400 | $560.00 |
| 7/26-7/27/22 | Exchange emails with client and A. Peschke RE settlement, deposition; review check does for settlement purposes | 0.6 | $400 | $240.00 |
| 8/23/2022 | Review discovery, file | 1 | $335 | $335.00 |
| 10/21-10/24/2022 | Exchange emails with Holtzman RE social security redaction; research relevant | 1.2 | $400 | $480.00 |

| Date | Description | Hours | Rate | Total |
|---|---|---|---|---|
| | law RE Defs filing of P's social security number on a public docket | | | |
| 2/20/2023 | Reading motions/case file, phone call with Jason, looking into deposition testimony, making notes RE potential arguments for Objection | 3.7 | $400 | $1,480.00 |
| 3/7/2023 | File review, marking up filings and making notes of arguments, finding exhibits to cite | 6.5 | $400 | $2,600.00 |
| 3/8/2023 | Research RE spoliation standard, drafted outline including applicable law, sent template agreements to Weiler | 5 | $400 | $2,000.00 |
| 3/13/2023 | Making edits to Objection, rearranging sections RE argument and factual statements, Research RE summary judgment standard, adding citations to motion, making all final changes with Weiler's input, filed same | 11 | $400 | $4,400.00 |
| 6/11/2023 | Reviewing Answer, research RE affirmative defenses | 1.2 | $400 | $480.00 |

Plaintiff requests $24,215 in attorney fees for work that was block billed or vague. As counsel has the burden to clearly delineate the tasks he performed on behalf of his client and how much time he spent performing each task, his request for this time should be denied.

### E.     Unnecessary or Excessive Motions

Courts will generally exclude any time spent on unnecessary or excessive motions because such time did not contribute to the prevailing plaintiff's successful claim. *See e.g.*, *Mrkonjic v. Delta Fam.-Care & Survivorship Plan*, No. CV 10-2087 GAF (JCX), 2014 WL 12967579, *8-10 (C.D. Cal. July 18, 2014) (excluding time spent on unnecessary motions including a summary judgement motion in which the plaintiff's attorney sought "entirely inappropriate relief" and an amended complaint that relied on improper law).

Here, the vast majority of the work performed after initial settlement negotiations were baselessly stifled was unnecessary. But even crediting counsel as engaging in settlement negotiations in good faith, the bills show that Plaintiff over litigated what is a simple case that turned only on the number of hours Plaintiff actually worked during a set period of months. This includes the following conduct that did not contribute to the success of Plaintiff's claims: amending the complaint to allege a collective action; issuing excessive, generic requests for written discovery on undisputed issues; issuing subpoenas of a Defendant's bank records; overstaffing depositions; filing a motion for summary judgment on damages; and challenging the report and recommendation regarding that motion for summary judgment.

This unnecessary and unsuccessful work is marked as "not successful" or "duplicative" in **Exhibit B** totals $33,880 in attorney fees and should be excluded from any award of fees.

### F.     Other Considerations

The Court may consider the results obtained when fixing an award of fees. *See* LRCiv. 54.2(e)(3)(E). Plaintiff was initially offered $4,549.75 in backpay and liquidated damages immediately after the complaint was filed. Instead of negotiating off that number, Plaintiff's counsel proceeded to spend another $70,000.00 in attorney fees between four attorneys over the course of more than 18 months to raise that amount by $2,950.25. *Cf. Stathakos v. Columbia Sportswear Co.*, No. 15-cv-04543-YGR, 2018 U.S. Dist. LEXIS 60143, at *11 (N.D. Cal. Apr. 9, 2018) ("[A] district court need not consider settlement negotiations in determining a fee award and may 'give those amounts as much or as little weight as it sees fit.'" (quoting *A.D. V. State of Cal. Highway Patrol*, 712 F.3d 446 (9th Cir. 2013))).  While Defendants do not dispute Plaintiff is the successful party, the measure of success is small.

## III. Costs

Defendants do not contest Plaintiff's statement of costs.

## IV. Conclusion

Defendants recognize they could have agreed to settle this case earlier and cut off attorneys' fees. Yet there was no evidence offered to suggest their records of Plaintiff's hours worked were incorrect, and Plaintiff didn't offer any evidence of his hours until his 5th Supplemental Disclosure. Even then, the evidence Plaintiff offered contradicted his own verified statements in his complaints.

The law states the penalty for failing to properly pay overtime is the unpaid overtime plus liquidated damages and a reasonable attorneys' fee. Defendants should not have had to pay more than the unpaid overtime and liquidated damages when there was no evidence their records were wrong. So, what is a reasonable fee here? Plaintiff's litigation resulted in Defendants paying approximately 53% more than what was offered at the outset. A reasonable fee would be 53% above Plaintiffs fees at the time, or $3,610.80—well above the 40% contingency Plaintiff agreed to.

DATED: August 23 2023

MESCH CLARK ROTHSCHILD

By   /s/ Barney M. Holtzman

Barney M. Holtzman
Jana L. Sutton
*Attorneys for Defendants*

13

**CERTIFICATE OF SERVICE**

I certify that on August 23, 2023, I electronically filed the foregoing with the U.S. District Court Clerk using the CM/ECF system which will send electronic notice to:

Jason Barrat
James Weiler
Kelsey Whalen
Jessica Miller
Weiler Law PLLC
5050 N. 40th St., Suite 260
Phoenix, AZ 85018
jbarrat@weilerlaw.com
jweiler@weilerlaw.com
kwhalen@weilerlaw.com
jmiller@weilerlaw.com
*Attorneys for Plaintiff*


  /s/ Ilsa Wolf_____

4888-4604-9914 v.1

14