WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Fritch,<br><br>    Plaintiff,<br><br>v.<br><br>Orion Manufactured Housing Specialists Incorporated, et al.,<br><br>    Defendants. | No. CV-21-00509-TUC-JGZ (JR)<br><br>**Order Re: Motion for Attorneys' Fees** |

  Plaintiff's counsel successfully litigated this action to resolution, obtaining a settlement for their client of $7,500 in unpaid wages and penalties. Now pending before the Court is Plaintiff's Motion for Attorneys' Fees and Costs, in which Plaintiff seeks $75,040 in attorneys' fees and $1,818.23 in costs for the litigation. (Docs. 94 & 98.) Defendants argue Plaintiff's attorneys' fees request is not reasonable and suggest the Court should award fees of $3,610.80. (Doc. 97.) Both parties detail their efforts to settle the case in support of their positions. Settlement offers may be considered by the Court in awarding fees. *See A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 461 (9th Cir. 2013) ("[T]he district court has the discretion (1) to consider the amounts discussed in settlement negotiations, or not; and (2) to give those amounts as much or as little weight as it sees fit.").

  Upon review of the record, the Court concludes that Plaintiff's requested fee is unreasonable. For the reasons stated in this Order, the Court will award Plaintiff $25,000

in fees and $1,752.75 in costs.

## I. Background

On December 8, 2021, Plaintiff Jason Fritch filed a Complaint alleging Defendant Orion Manufactured Housing Specialists Incorporated and Defendant L. James Miller (Defendants) failed to pay him overtime wages in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207. (Doc. 1.) On January 6, Plaintiff filed an Application for Entry of Default against Defendants (Doc. 7), and the Clerk entered default (Doc. 8), which the parties later agreed to set aside (Doc. 9).

On January 7, 2022, before filing an Answer to the Complaint, Defendants' counsel contacted Plaintiff's counsel, admitted Defendants' liability, and expressed a desire to quickly settle the case. (Doc. 97-1 at 7[1].) Thereafter, the parties engaged in settlement discussions via email.

On January 9, Plaintiff's counsel stated he had authority to settle the case for $13,000, inclusive of attorneys' fees and costs. (Doc. 97-1 at 6; Doc. 94-5 at 2.)

On Thursday, January 13, Defendants' counsel sent Plaintiff's counsel a spreadsheet showing Defendants' calculations of hours worked, rate of pay, and liquidated damages, for a total owed of $4,549.75. (Doc. 97-1 at 5.) Defendants offered $5,549.75 to settle the action, the calculated amount of wages owed plus $1,000 (presumably for costs and attorneys' fees). (*Id.*) Defendants noted that Plaintiff did not appear to know how many hours he had worked, his accurate rate of pay, or when his employment had ended, as the allegations in his verified Complaint were inconsistent with Department of Economic Security paperwork. (*Id.*)

Later that day, Plaintiff made a "last and final non-negotiable offer" of $11,000 to settle, stating Plaintiff was "not willing to take a penny less." (*Id.*) Plaintiff's counsel specified that the offer would expire Monday, January 17, at noon and stated that he would give a breakdown of attorneys' fees/costs and how much would go to his client if the offer was accepted. (*Id.*)

---

[1] The page numbers referenced throughout this Order are the electronic page numbers in the CM/ECF header of each document.

The next day, Friday, January 14, Defendants' counsel requested clarification about the $11,000 settlement offer, stating, "I don't know how I can analyze this offer without knowing what [Plaintiff] claims he worked or what your attorneys' fees are." (*Id.* at 4.) Counsel offered to send two checks to Plaintiff, one for unpaid overtime and one for liquidated damages, and to talk about Plaintiff's attorneys' fees or moving the lawsuit forward. (*Id.*)

Ten minutes later, Plaintiff's counsel replied, "My client rejects all tendered payments and will not cash the checks. I have litigated this issue many times." (*Id.*)

In response, Defendants' counsel indicated he would call Plaintiff's counsel. (*Id.* at 3.) Further, Defendants' counsel reiterated that Defendants were willing to pay what they understood to be owed to Plaintiff based on Defendants' records of hours worked, and also to pay reasonable attorneys' fees and costs. (*Id.*) Defendants again noted that the verified Complaint contained incorrect facts and expressed their doubt as to Plaintiff's truthfulness about the hours he had worked based on Plaintiff's lack of records and statements that are easily proved to be false. (*Id.*) Defendants also noted that Plaintiff had refused to provide Defendants with his attorneys' fees and costs. (*Id.*) Defendants' counsel concluded, "If we are correct as to what he is owed, I don't think a judge is going to award you any additional fees or costs." (*Id.*)

Two minutes later, Plaintiff's counsel responded with one sentence: "So, are you rejecting our offer?" (*Id.*)

It appears counsel spoke over the phone later that day. That afternoon, Defendants' counsel sent Plaintiff's counsel an email asking him to confirm that the terms of the offer were for Defendants to pay $11,000 for Plaintiff's FLSA claims and attorneys' fees/costs and that Plaintiff would not provide a breakdown of that number between FLSA claims and attorneys' fees/costs, nor provide what Plaintiff believes he is owed for unpaid overtime or how many hours of overtime Plaintiff claims he had worked. (*Id.* at 2.)

Plaintiff's counsel responded seven minutes later: "At this time, there is no offer on the table from our side as Defendants have declined our non-negotiable final offer." (*Id.*)

Three days later, on January 17, 2022, Plaintiff amended his complaint and filed a Collective Action Complaint for Compensation under the FLSA. (Doc. 11.) The next day, Plaintiff filed a Motion for Conditional Certification. (Doc. 12.) Plaintiff proposed the collective action consist of: "All persons who work[ed] for Defendants Orion Manufactured Housing Specialists, Inc., and/or L. James Miller; who work[ed] over 40 hours in any given workweek as a past or present worker, and who only received straight time for all hours worked over 40 in a given workweek." (*Id.*) Defendants did not object to the conditional certification, but did take issue with some aspects of Plaintiff's proposed notice. (Doc. 24.) Magistrate Judge Jacqueline Rateau issued a Report and Recommendation (R&R) in which she recommended the Court conditionally certify the class, but amend the proposed notice in several ways. (Doc. 38.) Neither Plaintiff nor Defendants objected to the R&R.

On May 3, 2022, while the R&R was pending, Plaintiff made a new settlement offer of $7,500 to Plaintiff, plus either $17,500 in attorneys' fees or a motion for attorneys' fees. (Doc. 94-5 at 4.)

On May 18, 2022, this Court adopted the R&R in full, thus conditionally certifying the class. (Doc. 43.)

On July 27, 2022, Plaintiff offered to settle the case for $25,000, inclusive of attorneys' fees and costs. (Doc. 94-5 at 5.) At that point, the one person who had opted in to the collective action had opted out (Docs. 44, 49, 50), and Magistrate Judge Rateau had issued a R&R recommending the Court deny Plaintiff's Motion to Toll the Statute of Limitations (Docs. 35, 51).

On August 4, 2022, Defendants offered to settle the case for $12,000 inclusive of attorneys' fees and costs. (Doc. 94-5 at 5.) Later that day, Plaintiff countered with an offer of $7,000 to Plaintiff and either $19,000 in attorneys' fees or a motion for attorneys' fees. (*Id.*)

On September 15, 2022, Plaintiff moved for summary judgment on the issue of damages—the only issue in dispute in the lawsuit. (Doc. 67.) Magistrate Judge Rateau

issued a R&R recommending the Court deny Plaintiff's motion because there was a genuine issue of material fact as to the hours of overtime Plaintiff had worked. (Doc. 78.)

On February 22, 2023, Defendants offered to settle the case for $18,000, inclusive of attorneys' fees and costs. (Doc. 94-5 at 7.) That same day, Plaintiff countered with a demand for $45,000, inclusive of fees and costs. (*Id.*)

On May 25, this Court adopted the R&R over Plaintiff's objection and concluded "that the inconsistencies in Fritch's sworn statements preclude summary judgment" because the "conflict between Fritch's sworn statements calls into question the reasonableness of Fritch's most recent estimate of hours worked." (Doc. 87 at 5.) This was the same issue raised by Defendants in their January 14 settlement discussions with Plaintiff.

On June 1, the Court held a pretrial conference and set a three-day jury trial for August 28, 2023, and other trial-related deadlines. (Docs. 88.)

On June 21, Plaintiff offered to settle the case for $7,500 to Plaintiff and to have the Court determine attorneys' fees and costs upon motion. (Doc. 94-5 at 8.) Defendants accepted the offer (*id.*) and Plaintiff filed a Notice of Settlement (Doc. 90) indicating the parties agreed that Plaintiff would receive $7,500 "plus attorney fees and costs as will be determined by the Court." (Docs. 92, 93.)

On July 11, Plaintiff offered to resolve the fees and costs by payment of $40,000 in attorneys' fees and $1,818.23 in costs. (Doc. 94-5 at 8.) Apparently, Defendants rejected the offer, and, on August 1, 2023, Plaintiff filed the instant Motion for Attorneys' Fees and Costs (Doc. 94), seeking $70,560 in attorneys' fees[2] and $1,818.23 in costs. (Doc. 94.)

## II. Lodestar Calculation

After a court concludes that a party is entitled to an award of attorneys' fees, it must determine whether the fees requested are reasonable by using the lodestar method. *See Staton v. Boeing Co.*, 327 F.3d 938, 965–66 (9th Cir. 2003). This method involves a two-step process. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). First, the court

---

[2] In their Reply, Plaintiffs sought an additional $4,480 for time spent preparing the reply to Defendants' Response to the Motion for Attorneys' Fees. (Doc. 98.)

- 5 -

multiplies the reasonable hourly rate by the number of hours reasonably expended. *Id.*; *see Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). "This figure, called the 'lodestar,' is presumptively reasonable." *Grabda v. IMS Acquisition LLC*, No. CV-20-00117-TUC-MSA, 2020 WL 6680378, at *1 (D. Ariz. Nov. 12, 2020) (citation omitted). A reasonable hourly rate is generally the prevailing market rate in the relevant community. *Kelly*, 822 F.3d at 1099. The actual rate an attorney charges is itself highly relevant proof of the prevailing community rate. *See Elser v. I.A.M. Nat. Pension Fund*, 579 F. Supp. 1375, 1379 (C.D. Cal. 1984). Second, the Court "determines whether to modify the lodestar figure, upward or downward, based on factors not subsumed in the lodestar figure." *Kelly*, 822 F.3d at 1099.

"In calculating the lodestar, district courts 'have a *duty* to ensure that claims for attorneys' fees are reasonable,' and a district court does not discharge that duty simply by taking at face value the word of the prevailing party's lawyer for the number of hours expended on the case." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) (citations omitted) (emphasis in original). Rather, a district court must ensure the prevailing attorneys have exercised "billing judgment." *Id.* "The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (internal citation omitted). Further, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," as hours "that are not properly billed to one's client also are not properly billed to one's adversary." *Id.* A district court has discretion to determine the amount of a fee award and although it is important for the court to "provide a concise but clear explanation of its reasons for the fee award," *id.* at 437, it "is not required to set forth an hour-by-hour analysis of the fee request," *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

Local Rule of Civil Procedure 54.2(c)(3) provides a list of factors to be considered

in assessing the reasonableness of a requested attorneys' fee award:

> (A) The time and labor required of counsel;
> (B) The novelty and difficulty of the questions presented;
> (C) The skill requisite to perform the legal service properly;
> (D) The preclusion of other employment by counsel because of the acceptance of the action;
> (E) The customary fee charged in matters of the type involved;
> (F) Whether the fee contracted between the attorney and the client is fixed or contingent;
> (G) Any time limitations imposed by the client or the circumstances;
> (H) The amount of money, or the value of the rights, involved, and the results obtained;
> (I) The experience, reputation and ability of counsel;
> (J) The "undesirability" of the case;
> (K) The nature and length of the professional relationship between the attorney and the client;
> (L) Awards in similar actions; and
> (M) Any other matters deemed appropriate under the circumstances.

LRCiv 54.2(c)(3); *see also Hensley*, 461 U.S. at 430, n.3; *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) (acknowledging factors useful in evaluating reasonableness of attorneys' fees), *abrogated on other grounds by City of Burlington v. Dague,* 505 U.S. 557 (1992).

### III.   Application

Plaintiff requests $75,040 in attorneys' fees and $1,818.23 in costs in accordance with Federal Rule of Civil Procedure 54(d), Local Rule of Civil Procedure 54.2, and 29 U.S.C. § 216(b), the FLSA fee-shifting statute which "provides for attorney fees and costs to a successful plaintiff." *Haworth v. State of Nev.*, 56 F.3d 1048, 1050 n.1 (9th Cir. 1995). The parties agree that Plaintiff was successful and is entitled to reasonable attorneys' fees and costs.

A. Reasonableness of Rate

Jason Barrat's hourly rate billed in this case is $400, Kelsey Whalen's is $335, James Weiler's is $400, and Jessica Miller's is $400. (Doc. 94-5 at 8.)  Defendants do not

challenge the reasonableness of these rates and the Court finds they are reasonable based on each attorney's qualifications and experience, and the prevailing rates for attorneys with similar years' experience in Tucson, Arizona.

### B. Reasonableness of Hours Expended

According to Plaintiff's counsel's timesheet and Reply, counsel spent a total of 177.7 hours on this case, with Jason Barrat billing 115 hours, Kelsey Whalen – 8, James Weiler – 9.4, and Jessica Miller – 45.3 hours. (Doc. 94-5 at 8.) Defendants assert, and this Court agrees, that the number of hours billed is not reasonable and certain tasks performed by Plaintiff's counsel are not compensable. This was a straightforward FLSA case in which Defendants admitted liability to Plaintiff before filing an answer. As of January 13, 2022, the only issue to be resolved was how much Defendants owed Plaintiff for the FLSA violation and attorneys' fees. Based on settlement discussions at that time, the amount due to Plaintiff was, at the most, $11,000. However, Plaintiff refused to provide any explanation of his request for $11,000, or to clarify what portion of the request constituted attorneys' fees and costs. When Defendants persisted in seeking an explanation, Plaintiff withdrew the settlement offer and pursued a course of litigation that increased costs unnecessarily. Plaintiff staffed the case with four lawyers[3] and engaged in a robust discovery and motions practice that did not advance resolution of the case. And, while it is true that Defendants could have tendered the total amount of wages Plaintiff claimed was due to him, Plaintiff did not make that amount known until May 3, 2022. Moreover, Defendants had every reason to ask Plaintiff to explain the basis for his earlier wage claims in light of Plaintiff's erroneous allegations in the Complaint regarding the dates of his employment and his hourly rate of pay. The Court acknowledges that Defendants put themselves at risk by destroying timecards in the first instance. But Defendants' misconduct does not justify Plaintiff's employ of excessive and unnecessary resources or

---

[3]Plaintiff is correct that there is nothing inherently unreasonable about a client having multiple attorneys. (Doc. 98 at 11.) However, given the straightforward issues presented in this case, the Court finds unreasonable the number of attorneys involved in light of the word performed, the tasks billed, and the duplicative nature of the attorneys' work.

- 8 -

Plaintiff's refusal to explain his wage calculation. If anything, Defendants' misconduct simplified the work Plaintiff had to do to prove his case by shifting the burden of proof. Unfortunately, in evaluating the case, Plaintiff's counsel failed to acknowledge Plaintiff's mistaken claims about his term of employment and rate of pay, and a case that should have been resolved early on, continued for eighteen additional months.

### 1. Review of Own Filings

Looking to the specifics of Plaintiff's claims for attorney compensation, the Court, on its own review, has identified several entries of non-billable activity. Barrat has billed for reviewing Plaintiff's own Complaint, summons, and service documents in the electronic docket (Docs. 1–4, 5–6, 8), the Court's one-page order assigning this case to Magistrate Judge Rateau (Doc. 14), documents not in the record (Docs. 18–19), text-only orders regarding magistrate jurisdiction and reassignment to this Court (Docs. 20–22), the Court's one-page order referring the case to Magistrate Judge Rateau (Doc. 23), Plaintiff's own notice of service of discovery (Doc. 31), counsel's own notices of appearance for Kelsey Whalen (Doc. 61), James Weiler (Doc. 62), and Jessica Miller (Doc. 81), and the Court's one-page order granting a joint Motion for Extension that Plaintiff's counsel filed (Doc. 80). The Court will exclude the 1.4 hours billed in these entries. *See Barbee v. DNSPWR2 LLC, et al.*, No. 3:20-cv-08100-MTM (Nov. 16, 2020) (Doc. 19) ("[R]eviewing Plaintiff's own filings in the Court's electronic filing system or reading the Clerk of Court's one-page default judgment entry—do not require an experienced attorney or support staff to perform, and are therefore not recoverable in a fee award."); *see also Gary v. Carbon Cycle Ariz. LLC*, 398 F. Supp. 3d 468, 487 (D. Ariz. 2019) (collecting cases).

### 2. Clerical and Non-Lawyer Tasks

Counsel has included clerical activities that the Court finds are not recoverable in a fee award. Barrat billed 0.1 hours for reviewing the call-in information for a telephonic scheduling conference. (Doc. 94-5 at 3.) This is plainly clerical. Counsel also billed 0.2 hours for "Review[ing] dkt 50 email from AZDdb_QA Staff RE incorrect event selected." (*Id.* at 5.) That is, it appears counsel is attempting to recover fees for the time spent to

correct counsel's own mistake in selecting the incorrect event when filing Plaintiff's Motion to Withdraw Opt-In Consent Form for Dakota Ressenger. (Doc. 49.) Counsel billed 0.2 hours for drafting "notice of change of name of firm" and 0.2 hours for drafting "firm name change letter to [P]laintiff." (Doc. 94-5 at 7.) Lastly, counsel billed 0.3 hours for "FOIA Request records from AZ industrial commission and labor board," 1.3 hours for researching "programs/application to track your iPhone for client to produce those records," and 0.4 hours for researching Defendants on BeenVerified.com. (*Id.* at 2, 3, 6.) These are paralegal or other non-lawyer tasks and should not have been billed at an attorney rate. *See Gary*, 398 F. Supp. 3d at 487 ("Attorneys' fees should not be given for the performance of administrative tasks which could and should be performed by secretarial or paralegal staff." (internal citation omitted)). The Court will exclude the 2.7 hours these entries total, which, at Barrat's rate, amounts to $1,080.

### 3. *Vague, Block-Billed, and Other Unreasonable Entries*

Local Rule 54.2(e)(2) provides that a party seeking a fee award "must adequately describe the services rendered so that the reasonableness of the charge can be evaluated. . . . If the time descriptions are incomplete, or if such descriptions fail to adequately describe the service rendered, the court may reduce the award accordingly." The rule provides specific examples and explains that a "legal research" entry "must identify the specific legal issue researched and, if appropriate, should identify the pleading or document the preparation of which occasioned the conduct of the research." LRCiv 54.2(e)(2)(B). Several entries in the timesheet are either too vague to evaluate for reasonableness, are block-billed, or are unreasonable:

- Barrat billed 1.4 hours on 2/22/2022 for "Draft disclosure statement, first [non-uniform interrogatories] and [requests for production]" (Doc. 94-5 at 3);
- Barrat billed 1.5 hours on 4/15/2022 for "Draft stipulation as to the elements of claims and research discovery caselaw" (*id.* at 3);
- Barrat billed 1.5 hours on 7/13/2022 for "Review [Report &

Recommendation recommending denial of Plaintiff's motion to toll statute of limitations], analyze and research if Plaintiff should object to the report and recommendation" (*id.* at 5);

- Barrat billed 0.6 hours on 7/26–7/27/2022 for "Exchange emails with client and A. Peschke RE settlement, deposition; review check docs for settlement purposes" (*id.* at 5);

- Whalen billed 1.0 hour on 8/23/2022 for "Review discovery, file" (*id.* at 6);

- Barrat billed 29.8 hours for drafting the motion for summary judgment, statement of facts, and the reply,[4] reviewing emails related to the motion, and entries related to Defendants' response to the motion. (*Id.* at 6.) Barrat (2.9), Weiler (1.5), and Miller (38.2) billed a total of 42.6 hours for reviewing and objecting to the R&R on the motion. (*Id.* at 7.) Work performed in relation to the motion for summary judgment was unreasonable given the clear dispute of material fact and Plaintiff's inconsistent statements on the one issue in dispute—damages.[5]

- Barrat billed 0.3 hours on 2/20/2023 for "Exchange emails with J. Miller RE documents" (*id.* at 7);

- Miller billed 1.2 hours on 6/11/2023 for "Reviewing Answer, research affirmative defenses" (*id.* at 8); and

- Miller billed 3.4 hours on 6/12/2023 for "Populating all admissions/denials from MSJ, Answer and RFAs, arranging for JPS, reviewing documentary evidence, including two exhibits, reviewing witnesses" (*id.* at 8).

---

[4] Barrat billed a total of 4.9 hours between October 24 and October 25, 2022 for drafting and "finaliz[ing]" the Reply in Support of Motion for Summary Judgment, which was less than three full pages. (Doc. 94-5 at 6.) This billing is also unreasonable and excessive considering the content and length of the filing and counsel's 11-years' experience litigating plaintiff wage and hour disputes. (Doc. 94-1 ¶¶ 3, 7.) For similar reasons, it was excessive to spend more than 40 hours reviewing and preparing an objection to the R&R on the motion for summary judgment.

[5] Although the Court declines to adopt Defendants' request to exclude all entries billed for "unsuccessful" motions, the Court concludes that Defendants should not be required to pay for motions that lacked a reasonable basis. Summary judgment is not appropriate where there is a disputed issue of fact.

The descriptions in these entries are either too vague, block-billed such that the Court cannot evaluate the reasonableness of each of the tasks charged, or unreasonable. The Court will exclude these entries which total 83.3 hours, or $33,255: 38 hours for Barrat ($15,200), 42.8 for Miller ($17,120), 1.0 for Whalen ($335), and 1.5 for Weiler ($600).

The Court also will reduce the hours billed for drafting Plaintiff's Motion to Toll Statute of Limitations (Doc. 35). Barrat billed 1.9 hours between 2/4/2022 and 4/25/2022 for drafting and finalizing the Motion. (Doc. 94-5 at 2–3.) The Motion is less than 1.5 pages and the content is nearly identical to a previous motion filed by counsel in a different FLSA case. (*Compare* Doc. 35 *with* Doc. 43 in *Scales v. Information Strategy Design, Inc.*, No. 2:18-cv-00087-DLR.) The Court concludes that 1.0 hour would be a reasonable amount of time to draft Plaintiff's Motion to Toll Statute of Limitations; thus, the Court will reduce the hours for this entry by 0.9 hours, or $360.

Defendants also argue Plaintiff's counsel over-staffed depositions. Given the straightforward nature of the case, Defendants' admission of liability at the outset of the case, and that the only issue to be determined was the number of hours Plaintiff had worked, the Court agrees that Weiler's appearances at the Brown and Gutierrez depositions on September 1, 2022, are duplicative and excessive, as was Weiler's preparation for such depositions on August 31, 2022. (Doc. 94-5 at 6.) Therefore, the Court will exclude 2.6 hours, or $1,040.

Excluding and reducing the above entries, which were vague, block-billed, or unreasonable, results in a reduction of 86.8 hours, or $34,655. *See Hensley*, 461 U.S. at 434 (excluding hours not reasonably expended).

### C.   Total Lodestar Award

The above exclusions and reductions total 90.9 hours, or $36,295. Having determined the reasonable rates and reasonable hours expended by Plaintiff's counsel, the Court concludes the lodestar is $34,265 based on 86.8 hours.

### D.   Lodestar Adjustment and Final Fee Calculation

"Although in most cases, the lodestar figure is presumptively a reasonable fee

1 award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). "Thus, courts may also consider the factors listed in LRCiv 54.2(c)(3) when determining the reasonableness of an attorneys' fee request." *Gary*, 398 F. Supp. 3d at 491. Many of these factors have already been considered in the lodestar analysis. For example, the time and labor required by counsel, LRCiv 54.2(c)(3)(A), was considered in analyzing the reasonableness of the hours billed. Four other factors are subsumed in evaluating the reasonableness of counsel's rate, including: the skill requisite to perform the legal service properly; the customary fee charged in this type of case; the experience, reputation, and ability of counsel; and the undesirability of the case. *See* LRCiv 54.2(c)(3)(C), (E), (I), (J). As to the other factors, Plaintiff's attorneys do not assert they were precluded from other employment due to acceptance of this case, or that there were any time limitations imposed by the client or the circumstances. *See* LRCiv 54.2(c)(3)(D), (G). Counsel has not previously represented Plaintiff. *See* LRCiv 54.2(c)(3)(K).

Plaintiff acknowledges the single overtime claim at issue here was "straightforward" and was not novel, LRCiv 54.2(c)(3)(B), but argues: "Defendants' destruction of documents including timecards, lack of production of requested documents and information, and lack of willingness to settle forced Plaintiff to litigate this for over 20 months and was very time consuming." (*Id.*) Plaintiff asserts FLSA cases are "traditionally accepted on a contingency fee basis," which is what happened here. *See* LRCiv 54.2(c)(3)(F). Plaintiff agreed to pay his attorneys either "40% of the gross amount collected" or "[a]n award or settlement payment specifically designated for attorneys' fees and costs"—whichever is greater. (Doc. 94-7 at 3.) None of these factors warrant an adjustment of the lodestar amount. Moreover, the Court rejects Plaintiff's suggestion that Defendants' destruction of documents and unwillingness to settle was the cause of this protracted litigation.

Plaintiff's counsel points to two cases in which they assert courts have granted similar awards: *Zuniga v. Fiesta Pediatric Therapy Inc.*, CV-15-1978-PHX-DKD, and

*Thompson v. Arizona Movers & Storage Inc.*, No. CV-17-03819-PHX-DGC, 2018 WL 2416187, at *3 (D. Ariz. May 29, 2018). *See* LRCiv 54.2(c)(3)(L). In *Zuniga*, the fee award was 20.9 times as much as the damages recovered for the plaintiff. No. CV-15-1978-PHX-DKD (Docs. 186, 199). In *Thompson*, the parties settled the case for $1,503.57 in unpaid wages and damages under the FLSA, and the court awarded $11,362.50 in attorneys' fees, after excluding several hours as unreasonable. 2018 WL 2416187. Although the fee award was 7.6 times higher than the plaintiff's settlement, the court found it was not excessive because counsel had "successfully recovered Plaintiff's full compensatory and statutory damages, and much of counsel's efforts could have been avoided had Defendants responded to the initial demand letter or accepted Plaintiff's offer to settle the fees for a significantly lower amount." *Id.* at *3. These cases are distinguishable. First, in *Zuniga,* the award came after a bench trial and almost three years of litigation involving many motions. Second, in *Thompson*, the court found the fee was not excessive because the case could have settled earlier and counsel's efforts could have been avoided but for defendants' actions. Here, however, the record shows much of Plaintiff's counsel's efforts could have been avoided if counsel had responded to Defendants' counsel's clarification request or had been reasonable in initial settlement discussions. In addition, although Plaintiff had the right to pursue his claims, counsel's efforts were excessive and unreasonable given what was disputed and what was not disputed in the case.

      As to the remaining factors, the Court concludes that the amount of damages at stake and the results obtained, as well as counsel's conduct during initial settlement discussions warrant an adjustment. *See* LRCiv 54.2(c)(3)(H), (M). The Court has detailed the progression of this litigation in this Order. The Court notes that Plaintiff received $7,500 in damages as the result of the June 21, 2023, settlement. This was approximately $3,000 more than Defendants had offered to pay Plaintiff for his wages in January 2022, at the beginning of this case, when only the Complaint had been filed. At that time, Defendants had admitted liability and appeared willing to settle the case for the amount Plaintiff was

owed for unpaid overtime. Plaintiff would not provide a calculation to justify his demand for wages greater than what Defendant had offered to pay. An award of $25,000 takes into account that Plaintiff first made known a specific demand for wages on May 3, 2022, demanding $7,500 in wages and $17,500 in attorney's fees.

The Court acknowledges that there are instances where plaintiff's counsel has no reasonable choice but to vigorously litigate in order to obtain fair and complete compensation for a client who is owed FLSA wages. This case, however, was not one of those instances.

### IV.  Conclusion

For the foregoing reasons, the Court grants the Motion for Attorneys' Fees and Costs to the extent the Court will award Plaintiff $25,000.00 in attorneys' fees and $1,752.75[6] in costs.

**IT IS ORDERED** Plaintiff's Motion for Attorneys' Fees and Costs (Doc. 94) is **GRANTED** to the extent the Court grants Plaintiff $25,000.00 for attorneys' fees and $1,752.75 for costs; the Motion is denied in all other respects.

**IT IS FURTHER ORDERED** the Clerk of Court shall enter judgment and close this action.

Dated this 19th day of December, 2023.

Jennifer G. Zipps
United States District Judge

---

[6] The Court will also exclude $65.48 of Plaintiff's costs associated with the motion for summary judgment. (Doc. 94-8 at 2.)